**IT IS ORDERED as set forth below:**

**Date: April 10, 2017**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| ONE  WORLD ADOPTION SERVICES, INC., | CASE NO. 14-63554-BEM |
| Debtor. | |
| | CHAPTER 7 |
| JEFFREY K. KERR, Chapter 7 Trustee for One World Adoption Services, Inc., | |
| Plaintiffs, | |
| | ADVERSARY PROCEEDING NO. |
| v. | 16-5057-BEM |
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, | |
| Defendant. | |

## PROPOSED STATEMENT OF UNDISPUTED MATERIAL FACTS & PROPOSED CONCLUSIONS OF LAW GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This Court submits this Proposed Statement of Undisputed Material Facts and Proposed Conclusions of Law to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 157(c)(1).

Pursuant to Federal Rule of Bankruptcy Procedure 9033(a), the Clerk shall serve this document on all parties forthwith. The parties shall have 14 days after being served to file and serve written objections. Fed. R. Bankr. Proc. 9033(b). If a party files objections, the other party shall have 14 days after being served with the objections to respond. *Id.*

## I. Introduction

The plaintiff in this proceeding is Jeffrey K. Kerr, chapter 7 trustee for the bankruptcy estate of One World Adoption Services, Inc., ("Trustee" and "Debtor," respectively). On March 7, 2016, Trustee filed a complaint [Doc. 1] against American Alternative Insurance Corporation ("AAIC") alleging AAIC failed to pay certain management liability claims in breach of contract. On April 25, 2016, AAIC filed Motion to Dismiss for Failure to State a Claim [Doc. 4]. Trustee filed an Amended Complaint [Doc. 6] on May 12, 2016, to add a request for a declaratory judgment that AAIC has a duty under the insurance policy at issue to defend and reimburse Trustee as to the management liability claims.

The matter before the Court is AAIC's Motion to Dismiss Amended Complaint for Failure to State a Claim [Doc. 10] ("Motion to Dismiss Amended Complaint"), which was filed on May 26, 2016, and which the Court converted to a Motion for Summary Judgment on November 18, 2016 [*see* Doc. 23]. For the reasons below, the Court concludes that AAIC is entitled to judgment as a matter of law.[1]

---

[1] On August 26, 2016, Trustee filed a Motion for Leave to Amend the Amended Complaint [Doc. 21]. In the order converting the Motion to Dismiss Amended Complaint to a Motion for Summary Judgment, the Court reserved

## II.      Statement of Jurisdiction and Statutory Authority

Bankruptcy jurisdiction extends to "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 157(a), 1334(b). A proceeding "arises under title 11" when it "invok[es] a substantive right created by the Bankruptcy Code." *Continental Nat'l Bank of Miami v. Sanchez* (*In re Toledo*), 170 F.3d 1340, 1345 (11th Cir. 1999) (citations omitted). A proceeding "arises in a case under title 11" when it "involve[s] administrative-type matters" or "matters that could arise only in bankruptcy." *Id.* (citations and internal quotation marks omitted). A proceeding is "related to a case under title 11" when the outcome "could conceivably have an effect on the estate being administered in bankruptcy." *Miller v. Kemira, Inc.* (*In re Lemco Gypsum, Inc.*), 910 F.2d 784, 787 (11th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

Under 28 U.S.C. § 157(b)(1), proceedings "arising under title 11" and proceedings "arising in a case under title 11" are core proceedings—proceedings in which bankruptcy courts can enter final orders and judgments.

Under 28 U.S.C. § 157(c)(1), proceedings "related to a cause under title 11" are non-core proceedings. Bankruptcy courts can hear non-core proceedings but must submit proposed findings of fact and conclusions of law to the district court.  Bankruptcy courts, however, are statutorily authorized to enter final orders and judgments in non-core proceedings with the consent of all parties. *See* 28 U.S.C. §157(c)(2).

This is a non-core proceeding. This proceeding is an insurance coverage dispute where the only causes of action are breach of a pre-petition contract and a request for declaratory

---

ruling on the Motion for Leave to Amend until a ruling on the motion presently before the Court. Because AAIC is entitled to judgment as a matter of law, the Court denies the Motion for Leave to Amend as moot. The Court will, however, revisit Trustee's motion should the District Court's ruling on the Motion for Summary Judgment render the issue non-moot.

judgment regarding the parties' rights under that contract. Neither cause of action invokes a substantive right created by the Bankruptcy Code, is an administrative-type matter, or is a matter that could arise only in bankruptcy.  The outcome of this proceeding, however, will affect administration of the estate because the outcome will determine how much money is available to estate creditors. Because this proceeding is non-core, the Court cannot enter a final order or judgment without the parties' consent.

Neither party has explicitly consented. Explicit consent (or non-consent) is typically found in pleadings. Under the Bankruptcy Rules in effect when this proceeding was filed, a complaint and responsive pleading were required state (1) whether the proceeding is core or non-core, and (2) if non-core, whether the party consents to the bankruptcy court's entry of a final order or judgment.[2] Trustee pleaded this matter as a core proceeding [Complaint ¶ 3; Amended Complaint ¶ 3] but did not (and was not required to at the time) make a statement as to consent. AAIC denied that this matter is core in its Memorandum of Law in Support of Motion to Dismiss. [Doc. 4-2 at 13]. AAIC did not, however,  otherwise state whether it consents to this Court's entry of a final order or judgment.

Parties can impliedly consent to a bankruptcy court's entry of a final order or judgment in a non-core proceeding, *see Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015). The boundaries of implied consent in a non-core proceeding, however, are relatively new and undefined. The Court hesitates to find implied consent when the defendant has not yet filed an answer and when this matter is at the summary judgment stage on the Court's own initiative,

---

[2] Until amended in December 1, 2016, Federal Rules of Bankruptcy Procedure 7008 and 7012 required both the complaint and responsive pleading to state whether the proceeding is core or non-core, and if non-core, whether the party consents to the bankruptcy court's entry of a final order or judgment. Those rules were amended to remove the requirement that a party state whether the matter is core or non-core. They now require only that party state whether that party consents to the bankruptcy court's entry of a final order or judgment.

thus the Court is entering this Proposed Statement of Undisputed Material Facts and Proposed

Conclusions of Law.

## III.     Summary Judgment Standard

Motions for summary judgment are governed by Federal Rule of Civil Procedure

56, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056.

Federal Rule 56 requires the Court to grant summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." When, as in this proceeding, "the nonmoving party bears the burden of proof at trial, the

moving party may discharge this 'initial responsibility' by showing that there is an absence of

evidence to support the nonmoving party's case or by showing that the nonmoving party will be

unable to prove its case at trial." *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256,

1260 (11th Cir. 2004). The respondent "may not rest upon the mere allegations or denials in its

pleadings" but "must set forth specific facts showing that there is a genuine issue for trial. A

mere 'scintilla' of evidence supporting the opposing party's position will not suffice[.]" *Walker*

*v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 252, 106. S. Ct. 2505, 2512 (1986)). Any material facts not controverted by the

respondent are deemed admitted. BLR 7056-1(a)(2).

The Court will only grant summary judgment when the evidence, viewed in the

light most favorable to the nonmoving party shows no genuine dispute of material fact. *Tippens*

*v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986). A fact is material if it "might affect the

outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. A

dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Id.*    "The court may consider any admissible facts and

disregard any inadmissible statements occurring in the same affidavit." *Devan v. Zamoiski Southeast, Inc. (In re Merry Go Round Enter., Inc.)*, 272 B.R. 140, 145 (Bankr. D. Md. 2000); *see also Peterson v. Board of Trustees of the Univ. of Ala.*, 644 F. App'x 951, 954 (11th Cir. 2016). At the summary judgment stage the Court "must not resolve factual disputes by weighing conflicting evidence." *Tippens*, 805 F.2d at 953 (quoting *Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986)).

## IV.    Undisputed Facts, Disputed Facts, and Policy Provisions in Dispute

### A.    Undisputed Facts

AAIC's Statement of Undisputed Material Facts [Doc. 25] ("SMF") and Trustee's Response to Defendant's Statement Of Undisputed Material Facts [Doc. 28] (the "Trustee's Response") show the following facts to be undisputed.

Pre-petition, Debtor provided adoption services that included expediting adoption of infants from the Congo for various clients in the United States. [SMF ¶¶ 1, 2; Trustee Response ¶¶ 1, 2]. Beginning in 2011, Debtor became embroiled in allegations of wrongdoing in facilitating adoptions when three of Debtor's Congolese adoptions purportedly "resulted in accusations that Debtor improperly documented the orphan status of the Congolese child involved." [SMF ¶¶ 3, 4; Trustee Response ¶¶ 3, 4]. Due to these allegations Debtor was investigated by the Council on Accreditation for Children and Family Services, Inc. ("COA") an "entity designated by the United States to accredit adoption agencies." [SMF ¶ 6; Trustee Response ¶ 6]. Debtor sued COA in federal court seeking a temporary restraining order to prevent suspension. [SMF ¶ 8; Trustee Response ¶ 8]. Debtor disputed COA's finding of any wrongdoing and argued that the suspension of accreditation was unsupported by fact or law. [SMF ¶ 8; Trustee Response ¶ 8]. Notwithstanding, Debtor's accreditation was ultimately

suspended. [SMF ¶ 7; Trustee Response ¶ 7].  Forty creditors of Debtor have filed proofs of claim in Debtor's bankruptcy case, none of which reflect or reference a suit or judgment against Debtor. [SMF ¶¶ 11, 12; Trustee Response ¶¶ 11, 12].

AAIC issued a claims-made-and-reported management liability insurance policy bearing policy number 99A2PL0004189-02 (the "Policy") to Debtor for a policy period of October 2, 2013, to October 2, 2014. [SMF ¶ 16; Trustee Response ¶ 16]. Debtor filed its Chapter 7 petition on July 14, 2014, during that policy period.

On September 29, 2014, Trustee's counsel sent a letter to York Risk Services Group ("York"), AAIC's third-party claims administrator (the "Trustee's 2014 Letter"), which advised that "many clients of Debtor have made claims against the corporation for deposits that they issued to the agency for an international adoption."  [SMF ¶ 26, 27; Trustee Response ¶¶ 26, 27]. The Trustee's 2014 Letter did not identify any specific wrongful acts alleged by such claims, identify who was making such claims, or include any documents suggesting that the claims were based on any alleged wrongful acts. [SMF ¶ 27; Trustee Response ¶ 27].  The Trustee's 2014 Letter purports to be a "notice of a claim by Debtor" and advised that the Trustee "hereby makes claim under the above-referenced policies, for coverage for Professional Liability, Directors and Officers Liability (and related D&O coverages) and any other provisions which may afford coverage for the claims asserted against the Debtor's estate. [SMF ¶ 28; Trustee Response ¶ 28]. On January 30, 2016, Trustee's counsel sent a letter to Richard Newman at York (the "Trustee's 2016 Letter"), demanding payment of $418,895.66 in connection with "the proofs of claim filed with the bankruptcy court and otherwise for return or refund of their funds." [SMF ¶ 30; Trustee Response ¶ 30].

Two lawsuits have been filed against Debtor by former clients arising out of a failed adoption. [SMF ¶ 37 Trustee Response ¶ 37]. The lawsuits were brought by Mark and Allison Salus and Alizon Garmon, who were prospective adoptive parents that contracted with Debtor for adoption services. [SMF ¶¶ 38, 39; Trustee Response ¶¶ 38, 39]. The two suits each alleged that Debtor failed to provide the adoption services it had agreed to, and alleged misconduct by Debtor and its representatives in connection with Congolese adoptions. [SMF ¶ 40 Trustee Response ¶ 40]. AAIC defended Debtor in both suits and resolved one of the suits. [SMF ¶¶ 41, 42; Trustee Response ¶¶ 41, 42]. The second suit is currently stayed due to Debtor's bankruptcy and the plaintiff in that suit has moved for leave to continue her suit. [SMF ¶ 43; Trustee Response ¶ 43]. Neither suit is the subject of a proof of claim filed in Debtor's bankruptcy. [SMF ¶ 44; Trustee Response ¶ 44].

Supporting Defendant's SMF are the following: the Policy [Ex. A to SMF]; the Trustee's 2014 Letter [Ex. B to SMF]; the Trustee's 2016 Letter [Ex. C to SMF]; the Declaration of Karen Bittner, Vice President of Defendant's parent company, Munich Re America Corporation [Doc. 26]; and the Declaration of Richard Newman, senior casualty claims analyst at York [Doc. 27].

### B. Disputed Facts

The SMF, the Trustee Response, and Trustee's Statement of Facts that Create a Genuine Issue For Trial ("Statement of Disputed Facts") show disputes relating to the notice Trustee gave AAIC of the claims against Debtor, and whether the notice complied with the Policy's notice requirements [SMF ¶ 29; Trustee Response ¶ 29; Statement of Disputed Facts ¶¶ 1–7], whether the proofs of claim represent claims for breaches of contract or for negligence

8

[SMF ¶¶ 10, 13, 14; Trustee Response ¶¶ 10, 13, 14], and the relevance of the "Basis for Claim" section of each proof of claim [SMF ¶¶ 12–15;  Trustee Response ¶¶ 12–15].

*Notice Dispute*

The parties dispute whether the Trustee's 2014 Letter constituted sufficient notice under the Policy to AAIC of any matter capable of being defended. [SMF ¶ 29; Trustee Response ¶ 29]. The parties also dispute whether Trustee sent York any written correspondence between the Trustee's 2014 Letter and the Trustee's 2016 Letter [SMF ¶ 31; Trustee Response ¶ 31];[3] whether AAIC ever received any direct correspondence regarding Debtor from Trustee before this adversary proceeding [SMF ¶ 32; Trustee Response ¶ 32];[4] whether before this adversary proceeding, AAIC or York was ever notified by Trustee in writing of a specific suit, action, or legal proceeding against Debtor, other than the Salus and Garmon suits [SMF ¶ 33; Trustee Response ¶ 33];[5] whether before January 22, 2016, Trustee or anyone on Debtor's behalf ever provided copies of or information regarding the proofs of claim [SMF ¶ 34; Trustee Response ¶ 34];[6] and whether before this adversary proceeding, Trustee ever, in writing, sought a defense of any proceeding from AAIC [SMF ¶ 35; Trustee Response ¶ 35].[7]

---

[3] Trustee states that on June 10, 2015, his attorney Andrew Beal emailed a York representative assigned to the claim to state that York had failed to investigate the claims despite a promise by the previous representative that York would do so. Response ¶ 31; Declaration of Andrew M. Beal ¶ 12 [Doc. 28 at 17]; Statement of Disputed Facts ¶¶ 1–2.

[4] Trustee states that AAIC instructed his attorney Andrew Beal to contact York about the claim. Beal sent the Trustee's 2014 Letter to York and the June 10, 2015, email to a York representative. Response ¶ 32; Declaration of Andrew M. Beal ¶¶ 6, 12 [Doc. 28 at 16, 17]; Statement of Disputed Facts ¶¶ 1–2.

[5] Trustee states that his attorney Andrew Beal put AAIC and York on notice that clients and creditors asserted claims against Debtor. The notice included multiple telephone calls, the 2014 Letter, the June 10, 2015, email, and the 2016 Letter. Trustee also states that neither AAIC nor York stated that Beal's communications were insufficient to serve as a claim or as sufficient notice. Per Trustee, on more than one occasion, a York representative orally promised or agreed to contact Trustee about the claims filed against Debtor. Response ¶ 33; Declaration of Andrew M. Beal ¶¶ 6, 7, 11, 12, 13, 17 [Doc. 28 at 16 16, 17, 18]; Statement of Disputed Facts ¶¶ 1–6.

[6] Trustee states his attorney Andrew Beal provided information to York "on numerous occasions" about the proofs of claim, and York representatives assured Beal that York would obtain the documents from Trustee. Trustee's Response ¶ 34; Declaration of Andrew M. Beal ¶¶ 6, 7, 11, 12, 13 [Doc. 28 at 16, 17]; Statement of Disputed Facts ¶¶ 1–6.

[7] Trustee states that his attorney Andrew Beal put AAIC and York on notice of the proofs of claim through multiple telephone calls, the Trustee's 2014 Letter, the June 10, 2015, email, and the 2016 letter. Response ¶ 35.

*Dispute Regarding Contract Breaches Versus Negligence*

AAIC states that "following that suspension [of accreditation], Debtor allegedly was unable to meet its contractual obligations to its clients and declared bankruptcy." [SMF ¶ 10]. Trustee does not directly admit or deny that statement but rather responds, "Following the suspension, Plaintiff was unable to perform adoptions and, thus, was unable to generate revenue." [Trustee Response ¶ 10].

AAIC states that some of the proofs of claim are unrelated to Debtor's adoption services, seeking only payment of trade debt, such as rent. [SMF ¶ 13]. Trustee denies this statement, stating that Debtor's "sole method of generating revenue was providing adoptions," and "due to the negligence of" Debtor's officers, Debtor is "[w]ithout the ability to provide adoptions" and "without a means to generate revenue." [Trustee Response ¶ 13].

AAIC states that "[r]oughly 37" of the claims filed against Debtor "appear to be former clients" of Debtor, and that these claims "are limited to [Debtor's] contractual liability for unperformed services or unpaid business expenses." [SMF ¶ 14]. Trustee denies this "as stated," elaborating, "The negligence of [Debtor's] officers caused [Debtor] to cease to be able to provide adoptions, which prevented [Debtor] from generating revenue." [Trustee Response ¶ 14].

*Dispute Over Relevance of "Basis for Claim"*

The Official Form with which the proofs of claim were submitted contains a section—entitled "Basis for Claim"—for claimants to briefly describe the basis for their claim. AAIC states that none of the proofs of claim "allege any tortious conduct or even mention alleged facts leading to the loss of" Debtor's accreditation. [SMF ¶ 15]. Trustee responds to this statement of fact, "A proof of claim does not require allegations of facts other than the fact that a claim exists, the amount, and whether the creditor contends the claim is secured, etc." [Trustee

Response ¶ 15]. While perhaps a true statement,[8] this does not dispute the statement of fact but rather disputes the relevance of AAIC's statement.

AAIC states that "[n]one of these proofs of claim reflect or reference a suit or judgment against" Debtor. [SMF ¶ 12]. Trustee admits that statement but notes that Debtor's "filing of bankruptcy would have prevented further suits from being filed and rendered the bankruptcy court and proof of claim process as the proper method for adjudicating claims against" Debtor. [Trustee Response ¶ 12].

### C.    Policy Provisions in Dispute

The parties dispute whether the Policy's organizational liability coverage extends to the proofs of claim filed against Debtor. The Policy provides coverage for organizational liability as follows:

> We will pay on behalf of the "organization" such "loss" which the "organization" becomes legally obligated to pay as a result of a "claim" first made against the "organization" during the "policy period" or during the applicable Extended Reporting Period.

(Policy § I.C.1; Doc. 6 at 24).  The words within quotation marks are defined in Section VII of the Policy. The parties dispute whether the proofs of claim are for a covered "loss" and whether they constitute "claims" under the Policy. The parties also dispute whether Debtor became "legally obligated to pay"—an undefined term—any loss.

The Policy defines "loss" as "'claims expenses', compensatory damages, 'claims expenses' and settlement amounts awarded pursuant to judgments." (Policy § VII.O; Doc. 6 at 33). This definition of "loss" contains an exclusion "[f]or liability under or breach of any oral, written or implied contract or agreement." [Policy § III.N; Doc. 6 at 26]. The parties dispute

---

[8] Trustee is generally correct that proofs of claim require minimal information about a claim. The Official Form, in fact, requests a small amount of basic information. Trustee's response at ¶ 15, of course, omits that claimants must describe the basis for their claims.

whether the proofs of claim filed against the estate constitute amounts awarded pursuant to judgments. The parties also dispute whether the proofs of claim reflect liabilities for breach of contract.

The Policy defines a "claim," in relevant part, as a "written demand for monetary damages against any 'insured' [or a] civil proceeding against any 'insured' commenced by the service of a complaint … for a 'wrongful act.'" [Policy § VII.D; Doc. 6 at 33]. The Policy defines a "wrongful act," in relevant part, as "any actual or alleged error, misstatement, misleading statement, neglect or breach of duty, omission or act by the 'organization.'" [Policy § VII.Y.2; Doc. 6 at 34]. The parties dispute whether the proofs of claim are for wrongful acts or for breaches of contract.

## V.    Conclusions of Law

The Court concludes the Policy does not cover the proofs of claim. The liabilities asserted in the proofs of claim are not "losses" under the Policy because they do not constitute amounts awarded pursuant to judgments. Moreover, the proofs of claim do not assert any "wrongful act" and thus are not "claims" under the Policy.[9]  Finally, the proofs of claim are for breaches of contracts, the liability for which is excluded from coverage under the Policy.

### A.    Analysis

The interpretation of the Policy is governed by Georgia law.  Under Georgia law, "[a]n insurance policy is governed by the ordinary rules of contract construction." *Southwest Ga. Fin. Corp. v. Colonial Am. Cas. & Sur. Co.,* 397 F. App'x 563, 567 (citing *Banks. v. Bhd. Mut. Ins. Co.,* 301 Ga. App. 101, 686 S.E.2d 872, 874 (2009). "The words used in policies of insurance, as in all other contracts, bear their usual and common significance, and policies of

---

[9] The Court's conclusion that the proofs of claim are not "claims" moots the issue of whether Trustee provided sufficient notice of the claims under the Policy.

insurance are, as in all other contracts, to be construed in their ordinary meaning." *Id.* (citing

*Lawyers Title Ins. Corp. v. Griffin,* 302 Ga. App. 726, 691 S.E.2d 633, 636 (2010). If the

provisions of the Policy are unambiguous their interpretation is a matter of law for the Court to

decide. *E.g.*, *Furgerson v. Cambridge Mut. Fire Ins. Co.*, 237 Ga. App. 637, 639, 516 S.E.2d

350, 352 (1999.).

Trustee bears the burden of proof to establish that he is raising a covered claim

under the Policy and AAIC has the burden to show that any exclusion from the Policy is

applicable. *Travelers Home & Marine Ins. Co. v. Castellanos*, 297 Ga. 174, 176, 773 S.E.2d 184,

186 (2015) ("[A]n insured claiming an insurance benefit has the burden of proving that a claim

falls within the coverage of the policy.'") (quoting *Castellanos v. Travelers Home & Marine Ins.

Co.*, 328 Ga. App. 674, 681, 760 S.E.2d 226, 232 (2014) (dissent)); *First Specialty Ins. Corp. v.

Flowers*, 284 Ga. App. 543, 544, 644 S.E.2d 453, 455 (2007) ("Under Georgia law, an insurer

seeking to invoke a policy exclusion carries the burden of proving its applicability in a given

case.").

### 1.    The Proofs of Claim Do Not Constitute Amounts Awarded Pursuant to Judgments

The Policy defines "loss" as "'claims expenses', compensatory damages, 'claims

expenses' and settlement amounts awarded pursuant to judgments." (Policy § VII.O; Doc. 6 at

33).[10]  Trustee asserts that the proofs of claim—which were deemed allowed and valid upon

filing, and which have not been disallowed[11]—are essentially judgments.  For this, Trustee relies

on opinions from three circuit courts of appeal which have held that allowed proofs of claim are

---

[10] The organizational liability coverage provision states that AAIC will pay for any "loss" Debtor "becomes legally obligated to pay as a result of a 'claim.'" (Policy § I.C.1; Doc. 6 at 24). AAIC argues that "becomes legally obligated to pay" is in essence a term of art requiring a judgment. The Court need not decide if this is correct, however, because the Policy defines "loss" as requiring a judgment.

[11] Under 11 U.S.C. § 502(a), a proof of claim "is deemed allowed, unless a party in interest … objects." Under Federal Rule of Bankruptcy Procedure 3001(f), "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

final judgments for res judicata purposes. [Trustee's Response to Defendant's Motion to Dismiss Amended Complaint at 3 [Doc. 15] (citing *Siegel v. Fed. Home Mortg. Corp.*, 143 F.3d 525, 528-31 (9th Cir. 1998); *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 740 (5th Cir. 1993); *EPD Med. Comput. Sys. v. United States*, 480 F.3d 621, 625 (2nd Cir 2007)].

Trustee further relies on *UNR Industries, Inc. v. Continental Casualty Co.*, 942 F.2d 1101 (7th Cir. 1991), which held that a confirmed chapter 11 plan was tantamount to a judgment or settlement that can trigger an insurer's coverage obligations. [Trustee's Response to Defendant's Motion to Dismiss Amended Complaint at 3–4].

Trustee's reliance on the above case law is misplaced. The cited cases are, without exception, easily distinguishable. Moreover, the Court disagrees that a judgment "for res judicata purposes" constitutes a judgment for purposes of an insurance policy. Below, the Court looks at each of the cases Trustee relies on. Then the Court explains why a judgment "for res judicata purposes" is not a judgment under the Policy.

*The Trustee Relies on Easily Distinguishable Cases*

In *UNR Industries,* a confirmed Chapter 11 plan contained a provision that "fully settled and satisfied" the claims of many asbestos victims by creating a trust for the benefit of the victims. 942 F.2d at 1104. The insurance policy at issue defined "loss" as requiring a judgment or a settlement. The Seventh Circuit held that the confirmed plan was both a judgment and a settlement. It was a judgment because the confirmation order was final and appealable; it was a settlement because "[t]he asbestos victims agreed … that their claims would 'be fully settled and satisfied.'" *Id.* at 104–05.

Among the many facts that distinguish *UNR Industries* from this proceeding, *UNR Industries* did not involve proofs of claim, their allowance, or whether their allowance (disputed or otherwise) constitutes a final judgment.

In *EDP Medical Computer Systems, Inc. v. United States,* 480 F.3d 621 (2nd Cir. 2007), the bankruptcy court entered an order allowing an uncontested claim filed by the IRS. The chapter 7 trustee paid the claim in full. Later, in a separate proceeding, the debtor contested the validity of the taxes underlying the claim and sought a refund. The Second Circuit held that the order allowing the claim constituted a final judgment for res judicata purposes. *Id.* at 627. In analyzing the "finality" of the allowed claim, the court relied primarily on two factors: (1) the claim was allowed pursuant to an order, and (2) the debtor received a discharge and the Chapter 7 case was closed. *See id.* at 625–26.

The *EDP Medical* opinion is distinguishable from this proceeding in that none of the claims filed against Debtor were allowed pursuant to an order. The Court did enter orders on four claims—Claim Nos. 3, 16, 28 and 38—after Trustee objected to them. [*See* Docs. 96, 97, 98, 99]. Those orders, however, did not allow the claims. Trustee's objections did not arise out of any dispute over liability or the claims' merits. The claims were filed asserting priority status. Trustee objected solely to the characterization as priority and requested that the Court reclassify the claims as general unsecured. The orders at issue, therefore, merely sustained unopposed objections to priority status and reclassified claims that had already been deemed allowed.[12]

Additionally, the court in *EDP Medical* based its decision, in part, on the finality afforded by a discharge and case closing. To the extent a discharge and case closing reflect

---

[12] The operative language in each order is limited to reclassification and does not refer to allowance. Each order ends, "ORDERED that the Objection is sustained; the claim of [Claimant & claim number] is reclassified as a general unsecured claim."

finality, Debtor is ineligible for a discharge because Debtor is not an individual,[13] and Debtor's case remains open and active.

In *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736 (5th Cir. 1993), the court did not actually analyze whether an allowed claim constitutes a final judgment for res judicata purposes. Rather, the court stated, "Our precedent clearly establishes that bankruptcy court orders authorizing the sale of part of the estate or confirming such sale are final judgments on the merits for res judicata purposes …. *Though perhaps less clearly, we read our prior holdings to establish that an order allowing a proof of claim is, likewise, a final judgment*." *Id.* at 742 (emphasis added).

The precedent referred to is *Colley v. National Bank of Texas (In re Colley)*, 814 F.2d 1008 (5th Cir. 1987). There, the debtor objected to certain claims and the bankruptcy court allowed the claims "following a trial on the merits." *Id.* at 1010. The debtor did not timely appeal but rather moved to reconsider the orders allowing the claims when he could no longer appeal. The debtor did not assert any of Federal Rule 60 grounds for reconsideration. On appeal of the motion's denial, the Fifth Circuit examined an apparent conflict between two standards for reconsideration: (1) a bankruptcy court's "virtually plenary" discretion to reconsider a claim's allowance or disallowance for cause under § 502(j) and Bankruptcy Rule 3008, and (2) the limited standards in Federal Rule 60, which allows for reconsideration under specified conditions and only within a year of entry of the order at issue. *Id.*

The court resolved the apparent conflict by looking to Bankruptcy Rule 9024, which provides that the one-year limitation in Federal Rule 60 does *not* apply to "the reconsideration of an order allowing or disallowing a claim against the estate entered without a

---

[13] *See* 11 U.S.C. § 727(a)(1). The Court notes that the debtor in *EDP Medical* was likewise not an individual. It is unclear how it obtained a discharge.

contest." *Id.* (quoting Fed. R. Bankr. P. 9024). The court concluded, "[W]hen a proof of claim has in fact been litigated between parties to a bankruptcy proceeding, the litigants must seek reconsideration of the bankruptcy court's determination pursuant to the usual Rule 60 standards if they elect not to pursue a timely appeal of the original order allowing or disallowing the claim." *Id.*

The above authority from the Fifth Circuit is distinguishable in that it involves an order allowing a claim after a trial on the merits, rather than an uncontested claim that is deemed allowed. Moreover, the authority appears to undermine the Trustee's arguments.  In particular, *Colley* highlights the lack of finality for any deemed allowance, as compared to an order allowing a claim after a trial on the merits. An uncontested allowance is subject to the bankruptcy court's "virtually plenary" discretion to reconsider for cause, according to the equities of the case.

In *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525 (9th Cir. 1998), Freddie Mac filed two proofs of claim, which were not objected to and thus deemed allowed, with no separate order entered. The debtor later sued Freddie Mac, alleging Freddie Mac violated its obligations under the loan documents that were the subject of the proofs of claim. The district court concluded that the debtor's action was barred by the res judicata effect of the bankruptcy proceeding. *Id.* at 528–29. The Ninth Circuit affirmed. The Ninth Circuit found that "the lack of a separate order is a distinction without a difference" and therefore unnecessary. *Id.* at 530.[14] The

---

[14] The court reasoned as follows: "Of course, if the court formally actually allows the claim, there can be little doubt about the ultimate res judicata effect of that allowance. But it is equally clear that when a claim is 'deemed allowed' it has the same effect. Consider: what else can 'deemed allowed' mean? It must mean deemed allowed by the court. In other words, it is deemed that the court has acted on the claim and ordered allowance. … It would be most peculiar if the effect was that uncontested and allowed claims had less dignity for res judicata purposes than a claim which at least one party in interest thought was invalid or contestable in whole or in part. We see no reason to embrace that rather peculiar result. Rather, we see § 502(a) as a recognition of the fact that people can raise objections and litigate them, if they see something wrong with a claim, but if they do not, the claim will be treated in

court noted that the concerns about the finality of deemed allowance expressed by the Fourth Circuit in *County Fuel Co., Inc. v. Equitable Bank Corp.,* 832 F.2d 290, 292 (4th Cir. 1987), were not present in *Siegel* because debtor had received his discharge and the bankruptcy case had been closed. *Id.* at 530–31. Moreover, the bankruptcy court had entered an order modifying the automatic stay to allow the mortgage holder to foreclose and the debtor had not objected to entry of the order. *Id.* at 529 n.3.

      *Seigel* is Trustee's most compelling authority. The *Seigel* opinion, however, has been criticized by many courts and has never been explicitly followed in this circuit. *See Fisher v. Santry (In re Santry)*, 481 B.R. 824, 830 (Bankr. N.D. Ga. 2012) (Murphy, J.).[15] Moreover, *Seigel*'s applicability to this proceeding is undermined by another opinion from the Ninth Circuit, *Diamant v. Kasparian (In re S. Calif. Plastics, Inc.)*, 165 F.3d 1243 (9th Cir. 1999).

      In *Diamant*, the Ninth Circuit held that an order allowing a claim could not substitute for, and was not equivalent to, a judgment for purposes of perfecting an attachment lien under California law. *Diamant*, 165 F.3d at 1248. The *Diamant* opinion illustrates a point the Court discusses below: a judgment "for res judicata purposes" need not be a judgment for other purposes. Per *Seigel*, the order allowing the claim in *Diamant* would be considered a judgment in the context of res judicata, but per *Diamant*, the order is not a judgment for purposes

---

all respects as a claim allowed by the court itself. In short, the validity of the claim has been determined on the merits, and attacks upon it that 'could have been asserted' cannot be raised in later proceedings." *Id.* at 530.
[15] This Court's research suggests that no court in this circuit has cited or relied on *Siegel* for anything helpful or authoritative in this proceeding. *See, e.g.*, *In re Wilbur*, 237 B.R. 203, 207 (Bankr. M.D. Fla. 1999) (citing *Siegel* in relation to determining when a claim arises); *Conroy v. Delta Air Lines, Inc.*, No. 07-61890-CIV, 2008 WL 1994830, at *1 (S.D. Fla. May 8, 2008) (citing *Siegel* in relation to how broadly the term "claim" is defined); *Avaya v. Matthews (In re Matthews)*, 458 B.R. 623, 627 (Bankr. N.D. Ga. 2011) (Diehl, J) (noting *Siegel*'s conclusion that a mortgagee's attorney fees incurred post-petition were not discharged, and distinguishing *Siegel* from the facts before the court); *Harrier v. Verizon Wireless Pers. Commc'ns LP*, 903 F. Supp. 2d 1281, 1282–83 (M.D. Fla. 2012) (rejecting Verizon's argument, which relied on *Siegel*, that pre-petition arbitration agreement should be enforced post-discharge); *Rosetta Stone Commc'ns, LLC v. Gordon (In re Chambers)*, 500 B.R. 221, 235 n.14 (Bankr. N.D. Ga. 2013) (Mullins, J.) (contemplating, in footnote dicta, the possibility that principles of res judicata barred claimant's attempt to recharacterize its deemed-allowed claim).

of state law attachment liens. Similarly, an allowed claim being a judgment for res judicata purposes says little about whether the allowed claim is a judgment under an insurance policy.

*A Judgment for Res Judicata Purposes Is Not Necessarily a Judgment Under the Policy*

The Court finds *Ziino v. Baker*, 613 F.3d 1326 (11th Cir. 2010), to be more relevant to this proceeding than the above authority, as well as more persuasive in terms of reasoning. Ziino filed a proof of claim in an individual's chapter 7 case for amounts owed under promissory notes. The debtor objected to the claim, asserting lack of consideration. The bankruptcy court overruled the objection and allowed the claim. Ziino thereafter received $160,000 (out the $800,000 claim) from the bankruptcy estate. The debtor was ultimately denied a chapter 7 discharge. *Ziino*, 613 F.3d at 1328. Ziino later attempted to enforce the order allowing his claim, arguing "that his allowed bankruptcy claim is an executable judgment, one that enables him to levy against any asset belonging to the bankruptcy debtor." *Id.* For this argument, Ziino relied on two cases Trustee relies on in this case, *EDP Medical Computer Systems, Inc. v. United States,* 480 F.3d 621 (2nd Cir. 2007), and *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736 (5th Cir. 1993). *See Ziino*, 613 F.3d at 1328.

In rejecting Ziino's contention that the allowed claim was an executable judgment, the Eleventh Circuit stated, "[A] 'judgment' is a term whose meaning depends on the context in which it is used.  For instance a 'final judgment' can simply be 'any order from which an appeal lies. … Additionally, … 'final judgment' can be any resolution of a dispute from which a preclusive effect flows." *Id.*  An allowed claim in bankruptcy, the Court noted, serves a different purpose than a money judgment—an allowed claim is not an attempt to recover a judgment against the debtor but to obtain a distributive share in the immediate assets of the

proceeding. *Id.* (citing *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir. 1977)).

The Policy defines "loss" by reference to "amounts awarded pursuant to judgments." The Policy covers losses arising from "claims," which in turn is defined by reference to a civil proceeding (or written demand) alleging a "wrongful act." In other words, the Policy covers amounts awarded pursuant to judgments arising from a civil proceeding alleging a wrongful act. The Policy clearly contemplates something similar to an executable money judgment awarded in connection with a judicial determination of liability for a wrongful act. The deemed allowed proofs of claim at issue bear no resemblance to a "judgment" under the Policy.

For the above reasons, the Court concludes that the deemed allowed proofs of claim are not "judgments" and therefore do not constitute "losses" under the Policy.

### 2.    Requirement of a "Wrongful Act"

Even assuming the allowed proofs of claim constitute judgments under the Policy, the proofs of claim would not be covered because they do not allege any wrongful acts, and they assert bases for recovery that are subject to a coverage exclusion.

The Policy defines a "claim," in relevant part, as "[a] written demand for monetary damages against any 'insured' … for a 'wrongful act', including any appeal therefrom." [Policy § VII.D;  Doc. 6 at 33]. The Policy defines a "wrongful act," in relevant part, as "any actual or alleged error, misstatement, misleading statement, neglect or breach of duty, omission or act by the 'organization.'" [Policy § VII.Y.2; Doc. 6 at 34].    Thus,    the    Policy requires a claim against Debtor based upon a wrongful act.

Trustee's theory of coverage relies on the claims at issue arising from the negligence of Debtor's former management. [*See, e.g.*, Complaint ¶ 7 ("Under the Policy, Debtor

is afforded coverage for a negligent act or occurrence by an insured which causes a claim to be made against the insured company during the coverage period, subject to standard insurance exclusions."); ¶ 20 ("As a result of the negligence of the management …, [Debtor] was unable to complete the adoptions or refund any of the clients' funds. As a result, 40 damaged clients have asserted claims against Debtor through proofs of claim …."

AAIC argues that the proofs of claim assert contractual liability, which does not satisfy the requirement of a wrongful act and which is within an express exclusion in the Policy. [*See* SMF 10–15; Memorandum in Support of Motion to Dismiss at 10 n.4 [Doc. 4-2]; Reply in Support of Motion to Dismiss at 12–13 [Doc. 9]; Reply in Support of Motion to Dismiss at 9–10 [Doc. 16]]. AAIC relies on the following Policy exclusion: "We will not pay for "any 'loss' or 'defense expenses' resulting from an 'claim' … [f]or liability under or breach of any oral, written or implied contract or agreement." [Policy § III.N; Doc. 6 at 26].

Certainly, the allegation that management's failure to properly document at least one child's orphan status in the adoption process constitute an error for which the Debtor may be held liable.  The question is, however, whether claimants are making such allegations or whether, as AAIC asserts, the proofs of claim are "limited to One World's contractual liability for unperformed services or business expenses" and that "none of these proofs of claim allege any tortious conduct or even mention the alleged facts leading to the loss … of accreditation." [SMF ¶¶ 14, 15]. AAIC argues, "[T]he proofs of claim seek repayment of money paid to One World in exchange for services that were never performed. … In other words, the proofs seek restitution for breach of contract. Because the Policy expressly excludes coverage for such claims, AAIC owes no duty to indemnify the Trustee or One World in connection with them." [Reply in Support of Motion to Dismiss at 10 [Doc. 16]].

21

Trustee does not dispute AAIC's factual statements regarding what the proofs of claim state. Rather, Trustee disputes their relevance, noting, "A proof of claim does not require allegations of facts other than the fact that a claim exists, the amount, and whether the creditor contends the claim is secured, etc." [Response ¶ 15]. Trustee also heavily relies on the Policy's Bankruptcy and Insolvency clause, which states, "Bankruptcy or insolvency of the 'insured' or of their estate shall not relieve us of any of our obligations under this coverage part." [Policy § VI; Doc. 6 at 30]. Trustee argues that this clause and the nature of bankruptcy's claims-processing are why the proofs of claim constitute "claims" under the Policy:

> [T]he Defendant's policy of insurance specifically contemplates the possibility that the insured will file bankruptcy and that claims will be made against the insured in bankruptcy. … In order to give meaning to this plain language of [the Bankruptcy and Insolvency clause], this Court must recognize the bankruptcy process as a means to make claims against this policy. Specifically, this court must recognize the bankruptcy claims process as a valid means of initiating and maintaining claims against the insured which are potentially covered under Defendant's policy of insurance.
> ….
> Defendant's argument that the proofs of claim are insufficient as they do not precisely allege the correct causal connection to the policy again overlooks the basics of bankruptcy procedure. Specifically, proofs of claim do not typically detail the claimant's theory of recovery or causation. Rather, proofs of claim are a mechanism for describing the creditor's relationship to the Debtor and quantifying its damages. [The Bankruptcy and Insolvency clause] mandates that the insurer recognize claims made against the insured while it is in bankruptcy, assuming that claimants have followed the procedures dictated set forth in the U.S. Bankruptcy Code. A creditor who has viable legal claims against an entity naturally considers a litigation option. However, if that creditor then receives a notice that the entity has filed a bankruptcy petition, the creditor may then conclude that his only option or his best option is not to seek stay relief but to file a Proof of Claim.
> ….
> As Plaintiff has set forth in its Complaint …, Plaintiff, standing in the shoes of the insured, seeks damages for the destruction of the debtor company caused by the negligence of the insured's directors and officers. When the directors and officers negligently subjected the insured to suspension of its accreditation, the insured lost its ability to generate revenue, rendering it unable to meet its ongoing financial obligations. Claims were made against the Debtor in the bankruptcy court via the only mechanism available to the claimants – the filing of proofs of claim.

[Supplemental Brief in Opposition to Motion to Dismiss at 4, 5–6 [Doc. 20]].

The Court concludes that the Policy does not cover the proofs of claim because the claims do not assert wrongful acts. Trustee's arguments to the contrary rest on unsupported and ill-defined notions that proofs of claim and the claims allowance process supplant and replace the procedures, rights, and obligations provided for in the Policy. The Policy requires that the claimant allege a wrongful act. Here, no one other than Trustee has alleged a wrongful act.

The Bankruptcy and Insolvency clause states, "Bankruptcy or insolvency of the 'insured' or of their estate shall not relieve us of any of our obligations under this coverage part." That clause does not mean that upon bankruptcy of the insured, the parties' obligations are modified to reflect the idiosyncrasies of bankruptcy procedure. It means AAIC must provide coverage pursuant to the Policy regardless of the bankruptcy. *See, e.g.*, ALLAN D. WINDT, 3 INSURANCE CLAIMS AND DISPUTES § 11:38 ("Such provisions are intended to prevent insurers from refusing to provide coverage by virtue of the fact that the insured was insolvent/bankrupt. That is, such provisions are intended to prevent insurers from having such an additional defense. The provisions are not intended to rewrite the insurance contract and give the insolvent/bankrupt insured more rights than a solvent insured.").

Trustee misses the point with his argument that proofs of claim do not require the level of detail required for a "claim" under the Policy. As already discussed, proofs of claim serve a certain purpose. The official proof of claim form is designed to elicit information to suit that purpose. The Policy's definitions of "claim" and "wrongful act" also serve a certain purpose. The information on a proof of claim, however, may not be suitable for that purpose. The

23

argument that proofs of claim are not intended to satisfy the requirements of a "claim" is a point against Trustee, not in favor.

### 3.    Exclusion for Losses Resulting from Contract Breaches

The Policy's coverage exclusion "[f]or liability under or breach of any oral, written or implied contract or agreement," [Policy § III.N; Doc. 6 at 26], applies to the proofs of claim.

The proofs of claim themselves, without exception, are based on Debtor's failure to refund money, pay the bills, and perform services. Each proof of claim includes a Basis for Claim. Claim 1 is for "paid for adoption services and never got completed." Claim 2 is for "pre-paid adoption services not performed/unused birthmother expenses." Claim 3's is for "work performed which was unpaid." Claim 4 is for "a refundable deposit." The rest are similar.

The Trustee does not appear to dispute that the proofs of claim assert contract claims.[16] The Trustee's theory in this case, as noted above, is that the negligence of Debtor's management caused Debtor to lose its accreditation, which resulted in Debtor's inability to complete adoptions and generate revenue, which in turn rendered Debtor unable to meet ongoing financial obligations, including returning clients' funds. In other words, management's negligence rendered Debtor insolvent, which in turn rendered Debtor unable to perform contracts.

---

[16] Trustee, however, has avoided addressing the issue head on. The Trustee does not squarely admit or deny the statements in Defendant's SMF that the claimants assert contract claims. SMF ¶ 10 states, "Following that suspension [of accreditation], One World allegedly was unable to meet its contractual obligations to its clients and declared bankruptcy." Trustee responded, "Following the suspension, Plaintiff was unable to perform adoptions and, thus, was unable to generate revenue." [Response ¶ 10]. SMF ¶ 14 states, "Roughly 37 of these creditors appear to be former clients of One World. These proofs, however, are limited to One World's contractual liability for unperformed services or unpaid business expenses." The Trustee responded, "Defendant's Statement No. 14 is denied as stated. The negligence of One World's officers caused One World to cease to be able to provide adoptions, which prevented One World from generating revenue." [Response ¶ 14].

For two reasons, Trustee's focus on the alleged negligence, rather than on the contract breaches, is misguided. First, while a single course of action can constitute both breach of contract and negligence, "where defendant's negligence ends merely in non-performance of the contract and where defendant is not under any recognized duty to act apart from contract, … an action in tort may not be maintained for what is a mere breach through non-action or through ineffective performance (which is the same thing) of a contract duty—the duty must arise independent of contract to constitute a tort." *Travelers Ins. Co. v. King*, 160 Ga. App. 473, 475, 287 S.E.2d 381, 383 (1981). Debtor's failure to perform contracts and refund money breached contractual obligations. Trustee has merely alleged, in general terms, negligence. He has not alleged or explained or proved any independent duty, let alone an independent duty that was breached.

Second, the exclusion for losses "resulting from any" contract breach is construed broadly and applies to all losses and claims for which the breach is a "but for" cause of. *See, e.g.*, *Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 713, 502 S.E.2d 514, 516 (1998) (noting the "very broad interpretation to the words 'arose out of' and 'to have been caused by' found in the exclusion clauses of different policies"); *Jefferson Ins. Co. of N.Y. v. Dunn*, 269 Ga. 213, 215, 496 S.E.2d 696, 699 (1998) (claim arises out of or is caused by excluded conduct if "there could be no claim" "but for" that conduct; policy exclusion for injuries caused by assault and battery also excluded coverage for negligent supervision that arose out of assault and battery); *Video Warehouse, Inc. v. Southern Trust Ins. Co.*, 297 Ga. App. 788, 791, 678 S.E.2d 484 (2009) ("Claims arise out of excluded conduct when 'but for' that conduct, there could be no claim against the insured.").

The losses at issue here would not have been incurred but for Debtor's failures to perform services and refund money. To the extent causes of action for negligence exist, the damages derive from excluded conduct—breach of contract.

For the above reasons, the Court concludes that the proofs of claim are subject to the Policy exclusion for losses resulting from contract breaches.

## VI.    Conclusion

For the foregoing reasons, Defendant AAIC is entitled to judgment as a matter of law on Trustee's claim for breach of contract and request for declaratory relief.

**END OF ORDER**

**Distribution List**

Melvin Bratton
7240 Weber Street
Atlanta, GA 30349

Eugenia Bratton
7240 Weber Street
Atlanta, GA 30067

Dana M. Tucker Davis
Tucker Davis Law
Suite 336
2470 Windy Hill Road
Marietta, GA 30067

Gregory Bernard Bryant
PO Box 93081
Atlanta, GA 30377

Carolyn V. Jordan
Suite 200
160 Clairemont Avenue
Decatur, GA 30030

Paul A. Rogers
McGuire Woods, LLP
Promenade II, Suite 2100
1230 Peachtree Street, NE
Atlanta, GA 30309-3534

Kyle A. Cooper
Kyle A. Cooper, Trustee
Suite 102
615 Colonial Park Drive
Roswell, GA 30075